# In the United States Court of Federal Claims

No. 20-221T
(Filed: June 20, 2023)

* * * * * * * * * * * * * * * * * * * * * * * *

THOMAS J. BOND ET AL.,

    *Plaintiffs*,

v.

THE UNITED STATES,

    *Defendant*.

* * * * * * * * * * * * * * * * * * * * * * * *

## OPINION

  This is an action by plaintiffs for the recovery of Social Security taxes allegedly unlawfully collected. Defendant files a counterclaim seeking the return of a tax refund improperly made. The parties have filed competing cross motions for summary judgment. Oral argument was held on May 10, 2023. For the reasons below, we hold that plaintiffs are not entitled to a refund, and we grant summary judgment as to defendant's counterclaim.

## BACKGROUND

  Plaintiffs are Australian nationals who were living in the United States temporarily between 2017 and 2020 while Mr. Bond worked for Shell Australia. During that time his employer collected Social Security taxes (FICA) on behalf of the United States from Mr. Bond's paychecks. At the same time, he was also subject to the equivalent tax charged by Australia. In effect, then, Mr. Bond was doubly taxed for retirement benefits.

  To eliminate this type of double taxation, the United States has entered into numerous "totalization agreements" with other countries, including Australia, by executive agreement. The parties agree that the

Totalization Agreement between the United States and Australia, which went into effect in 2002, governs the coverage and calculation of benefits under the social security systems of both countries. Under Article 6.3 of this agreement, an employee transferred from a related entity in Australia to a related entity in the United States for a period projected to be less than 5 years may claim an exemption from U.S. Social Security and Medicare taxes during their period of temporary employment in the United States.

Plaintiffs argue that the agreement is, with respect to taxpayers, self-enforcing and that no formality is required to establish an exemption. In other words, the role of the court in this refund case is simply to decide on the merits whether Mr. Bond was unnecessarily subjected to double taxation. If he was, then plaintiffs are entitled as a matter of law to a return of the taxes paid to the United States.

Defendant does not dispute plaintiff's entitlement to seek exemption from double taxation. It argues, however, that the totalization agreement, when viewed in the context of procedures and instructions adopted by the United States, establishes as a prerequisite to any exemption that an employee obtain a certificate issued by the appropriate agency in either country. It also argues that Australia has adopted a similar understanding. It is undisputed that Mr. Bond did not obtain a certificate from any government entity.

The "Agreement between the Government of the United States of America and the Government of Australia on Social Security," provides that

> Where a person who is normally employed in the territory of one Party [Australia] by an employer in that territory is sent by that employer to the territory of the other Party [the United States] for a temporary period, the person and the person's employer shall be subject to the laws of only the first Party as if the employee were employed in the territory of the first Party provided that the period of employment in the territory of the other Party is not expected to and does not exceed 5 years.

Agreement between the Government of the United States of America and the Government of Australia on Social Security, art. 6.2, Austl.–U.S., Sep. 27, 2001. Article 12 adds that

The Competent Authorities of the two Parties shall:

2

> (a) make all necessary administrative arrangements for the implementation of this Agreement and designate liaison agencies;
>
> (b) communicate to each other information concerning the measures taken for the application of this Agreement.

*Id.*

The two countries separately but simultaneously executed an "Administrative Arrangement for the Implementation of the Agreement." Article 3.1 of that arrangement provides that

> Where the laws of a Party are applicable in accordance with any of the provisions of Article 6 of the Agreement, the Agency of that Party, upon request of the employer or self-employed person, shall, in circumstances agreed upon by the Parties, issue a certificate stating that the employee, or the employer with respect to that employee, or self-employed person is subject to those laws and indicating the duration for which the certificate shall be valid. This certificate shall be proof that the named worker and the employer in respect of the named worker are exempt from the laws on compulsory coverage of the other Party.

Administrative Agreement for the Implementation of the Agreement Between the Government of the United States of America and the Government of Australia on Social Security, Austl.–U.S., Sep. 27, 2001. The arrangement goes on in Article 3.3 to recite that

> Under Article 3.1, the agency of the country whose coverage laws will continue to apply to a person in accordance with the various rules set forth in Article 6 of the Agreement will issue a certificate to that effect when requested to do so by an employer or a self-employed person. When presented to the appropriate agency of the other country, the certificate will establish the basis for the exemption of the person from the coverage laws of that country.

To put these provisions into the context of this dispute, Australia will issue a certificate of exemption to Mr. Bond when Shell requests it to do so, and that certificate will constitute proof of exemption to the Internal Revenue Service (IRS) and the Social Security Administration (SSA).

3

Congress has given authority to SSA to "make rules and regulations and establish procedures which are reasonable and necessary to implement and administer [totalization agreements]." 42 U.S.C. § 433(d) (2018). But only one SSA regulation speaks to the role of certificates of coverage, and it states that "[u]nder some agreements, proof of coverage under one social security system may be required before the individual may be exempt from coverage under the other system." 20 C.F.R. § 404.1901 (2022). It then provides that "[r]equests for certificates of coverage under the U.S. system may be submitted by the employer, employee, or self-employed individual to SSA." *Id.* We note that the regulation allows an employee as well as the employer to ask SSA for such a certificate when it is an American citizen asking for proof of coverage to avoid Australian taxes. The Totalization Agreement, on the other hand, makes reference only to self-employed persons or the employer making such a request.

While it is the duty of SSA to administer the benefits of Social Security, the IRS acts as its collection agency for FICA taxes. Under 26 U.S.C. § 3101, the IRS is instructed to treat wages that are subject to a totalization agreement "as exempt from the taxes imposed by this section":

> During any period in which there is in effect an agreement entered into pursuant to section 233 of the Social Security Act with any foreign country, wages received by or paid to an individual shall be exempt from the taxes imposed by this section to the extent that such wages are subject under such agreement exclusively to the laws applicable to the social security system of such foreign country.

In support of that section, the IRS has established its own procedures with respect to totalization agreements, which were put in place long before the Australia-United States totalization agreement was adopted. In relevant part, Revenue Procedure 80-56 recognizes an exemption from FICA taxes in the context of totalization agreements at Section 4: "In order to substantiate an exemption from the taxes imposed by the FICA . . . the employer must obtain a statement issued by a duly authorized official or agency of the foreign country involved." Rev. Proc. 80-56, 1980-50 I.R.B. 21. Later, Revenue Procedure 84-54 was adopted in recognition of the fact that some foreign agencies were not honoring employer requests for certificates of exemption. It provides that "[i]f the foreign country will not issue such a statement, either the employer *or the employee* should secure a statement issued by [SSA]

4

stating that the employees wages . . . are not covered by the United States Social Security System." Rev. Proc. 84-54, 1984-28 I.R.B. 11 (emphasis added).

In addition to these officially adopted treaties, statutes, regulations, and procedures, both the SSA, the IRS, and the Australian Tax Office have issued instructions that explain how each expects the totalization agreements to operate. An SSA instruction booklet, for example, tells employees that

> [a] certificate of coverage issued by one country serves as proof of exemption from Social Security or SG contributions on the same earnings in the other country. . . . To establish an exemption from U.S. Social Security contributions . . . your employer must request a certificate of coverage . . . from the Australian Taxation Office.

SSA, *Agreement Between the United States and Australia* 2 (2018). A parallel provision dealing with self-employed individuals provides that they "must get a letter of exemption from [SSA]." *Id.* at 4.

At its official agency website, SSA makes available instructions concerning dual taxation. It tells employees that "[w]orkers who are exempt from U.S. or foreign Social Security taxes under an agreement must document their exemption by obtaining a certificate of coverage from the country that will continue to cover them." SSA, *U.S. International Social Security Agreements*, https://perma.cc/S8YL-5CMA (last visited June 14, 2023). For Mr. Bond, this meant that he needed to obtain from Australia a certificate of coverage that he or his employer could then use to explain why Shell was not withholding his social security taxes. If he had, "the foreign certificate [would have] serve[d] as proof of [his] exemption." Rev. Proc. 84-54.

The IRS has a similar posting. It instructs persons in Mr. Bond's position that

> If the employee is an alien who wishes to claim an exemption from [FICA] because of the Totalization Agreement he/she must secure a Certificate of Coverage from the social security agency of [Australia] and present such Certificate of Coverage to his employer in the United States, according to the procedures set forth in Revenue Procedures 80-56, 84-54 and

5

> Revenue Ruling 92-9. *An alternate procedure is provided in these revenue procedures for an alien who is unable to secure a Certificate of Coverage from his home country.*
>
> . . . .
>
> This statement should be kept by the employer because it establishes that this employee's pay is exempt from U.S. Social Security tax.

IRS, *Totalization Agreements*, https://perma.cc/7X8H-6Z6Q (last visited June 14, 2023) (emphasis added).  Australia's counterpart, its Taxation Office, posts on its website that "Employers must pay super guarantee (SG) contributions for Australian employees working temporarily overseas.  You can apply to us for a certificate of coverage, so that you don't have to pay super in the other country as well." Australian Tax Office, *Super for Employees Working Overseas – Certificate of Coverage*, https://perma.cc/4NRW-DENN (last visited June 14, 2023).

      Unfortunately for Mr. Bond, his employer did not request a certificate of coverage demonstrating that he was subject to Australia's social security system.  Nor did Mr. Bond pursue the alternative procedure offered by Revenue Procedure 84-54.  Instead, he enlisted the help of John Castro, a tax preparer who composed an affidavit affirming the facts necessary to show that Mr. Bond was subject to the social security laws of Australia.  Plaintiffs filed an income tax return for 2017, claiming a refund prompted by the dual collection.  They received that refund.  The following year, plaintiffs once again filed a refund request based on the asserted over collection of FICA taxes.  The IRS declined to honor the affidavit and partially rejected the refund request for $14,021.  This lawsuit commenced.

## DISCUSSION

      As plaintiffs point out, the Agreement says that persons subject to double taxation who can benefit from a totalization agreement "*shall*" be exempt from the other country's social security taxes. Totalization Agreement, art. 6.3 (emphasis added). But §433 gives authority to SSA to "make rules and regulations and establish procedures which are reasonable and necessary to implement and administer any [totalization] agreement." And under SSA regulations, which apply to all totalization agreements, "proof of coverage under one social security system may be required before

6

the individual may be exempt from coverage under the other system." § 404.1901.  Indeed, the simultaneously adopted administrative agreement provides in Article 3.1 that SSA will issue certificates of coverage when asked to do so by an employer or a self-employed person, and that "*the certificate will establish the basis for the exemption* of the person from the coverage laws of that country."  Administrative Agreement, art. 3.1 (emphasis supplied).

Admittedly, this regulation does not make explicit that the agency certificates are the exclusive means of proof, but both the IRS—which is responsible for collecting FICA—and the SSA—which administers benefits and has authority to adopt regulations—have given interpretive guidance that makes more explicit the expectation that only the officially sanctioned certificates will serve as proof. *See* Rev. Proc. 80-56 ("If the employee is an alien who wishes to claim an exemption from [FICA] because of the Totalization Agreement *he/she must secure a Certificate of Coverage from the social security agency of [Australia]*." (emphasis added)); SSA, *U.S. International Social Security Agreements*, *supra* ("Workers who are exempt from U.S. or foreign Social Security taxes under an agreement must document their exemption by obtaining a certificate of coverage from the country that will continue to cover them."); IRS, *Totalization Agreements*, *supra* ("the employee . . . must secure a Certificate of Coverage from the social security agency of [Australia]").

We view the word "must" as limiting proof to an officially generated certificate.  Although this interpretive guidance is not legally binding on the court, it reflects the understanding of both United States agencies with enforcement responsibility.  As defendant points out, this construction is shared by the corresponding Australian agency and such a shared understanding can be used by the court as an interpretive aid. *See Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185 (1982).  And defendant is also correct that the exemption from what would otherwise be the obligation to pay FICA taxes in the United States should, like all exemptions, be narrowly construed. *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 59–60 (2011).

We agree with defendant that the IRS was correct not to accept plaintiffs' unofficial certificate as proof of double coverage.  The Agreement itself is susceptible to the construction applied by the IRS and we believe that the government's interpretation requiring an official certification can be

7

legally enforced as a prerequisite to exemption. It follows that plaintiffs are not entitled to a tax refund and defendant is entitled to recover on its counterclaim.

## CONCLUSION

In sum, plaintiffs are not entitled to an exemption from FICA because they did not obtain an official certificate that substantiates their exemption under the U.S.–Australia Totalization Agreement. Accordingly, we order the following:

1. The plaintiffs' motion for summary judgment is denied.

2. The government's cross-motion for summary judgment is granted.

3. The parties are directed to confer and attempt to agree on the correct amount of defendant's judgment.

4. The parties shall submit a joint status report on or before July 14, 2023.

<u>s/Eric G. Bruggink</u>
ERIC G. BRUGGINK
Senior Judge